# In the United States Court of Federal Claims

No. 17-855C

(Filed: December 7, 2017)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| HAHNENKAMM, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Statutory and contractual claims; jurisdiction; Santini-Burton Act; Southern Nevada Public Land Management Act; alleged breach of contractual terms sufficient to state a claim for relief under the Tucker Act

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Roger J. Marzulla, Marzulla Law, LLC, Washington, DC, for plaintiff.  With him on the briefs and at the hearing was Nancie G. Marzulla, Marzulla Law, LLC, Washington, DC.

Geoffrey Martin Long, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  With him on the briefs were Chad A. Readler, Acting Assistant Attorney General, Civil Division, Robert E. Kirschman, Jr., Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, United States Department of Justice, Washington DC.

## OPINION AND ORDER

LETTOW, Judge.

Hahnenkamm, LLC seeks damages against the United States, alleging a breach of contract and contravention of two federal statutes, the Santini-Burton Act, Pub. L. No. 96-586, 94 Stat. 3381 (1980) (not codified in relevant part in the United States Code), and the Southern Nevada Public Land Management Act, Pub. L. No. 105-263, 112 Stat. 2343 (1998) ("Southern Nevada Land Act") (not codified in relevant part in the United States Code).  Hahnenkamm's claims stem from a land transaction by which the United States Forest Service's Lake Tahoe Basin Management Unit acquired "Cave Rock Summit," a 39.25 acre tract of land overlooking Lake Tahoe in Douglas County, Nevada.  The transaction occurred under an Option Agreement entered between Hahnenkamm and the Forest Service.  Compl. at 1-2 & ¶ 6.

Hahnenkamm alleges that the statutes, which authorize the Forest Service to acquire "environmentally sensitive lands" in the Lake Tahoe region, require the Forest Service to pay fair market value for those acquisitions, and that the Option Agreement that governed the transaction likewise obligated the Forest Service to pay fair market value and obtain an appraisal

that conformed to certain federal land appraisal standards—standards with which the Forest Service allegedly did not comply.  Compl. at 1 & ¶ 34.  Hahnenkamm asserts that the fair market value of Cave Rock Summit is approximately $20,000,000, and seeks damages in the amount of the difference between the purchase price provided in the Option Agreement and the fair market value as determined by an appraisal conducted in conformity with federal land appraisal standards.  Compl. at 1 & ¶ 34.

Pending before the court is the government's motion to dismiss for lack of subject matter jurisdiction under Rule 12[b](1) of the Rules of the Court of Federal Claims ("RCFC") and for failure to state a claim upon which relief may be granted under RCFC 12[b](6).  Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 5.  This motion has been fully briefed by the parties and is ready for disposition.

## BACKGROUND[1]

Cave Rock Summit was acquired in 1909 and passed down to family members through several generations.  Compl. ¶ 6.  In 2004, the family formed Hahnenkamm, a Nevada limited liability company, to hold title to Cave Rock Summit, intending to develop it as a "luxury residential estate compound."  Compl. ¶¶ 1, 6.  From 2004 to 2014, Hahnenkamm satisfied various prerequisites to developing Cave Rock Summit, including securing building permits from the Tahoe Regional Planning Agency and rights-of-way for access from the Forest Service.  Compl. ¶¶ 7-8.  Also during this time, Hahnenkamm was in talks to sell Cave Rock Summit to the government for conservation purposes.  *See* Compl. ¶¶ 17-23.

The Forest Service issued preliminary approval to purchase Cave Rock Summit in 2008, earmarking $11,686,950 for the acquisition.  Compl. ¶ 17.  In late 2013, the Service retained Daniel Leck, a local-appraiser to perform an appraisal of the property.  Compl. ¶ 19.  Cave Rock Summit was initially appraised at $4 million, which Hahnenkamm did not accept and instead requested a second opinion.  Compl. ¶¶ 19-20.  The Forest Service permitted a second appraisal to be done at Hahnenkamm's expense, but subjected the second appraisal to a Valuation Services Protocol that restricted Hahnenkamm's authority to participate in the appraiser's work.  Compl. ¶¶ 20-21.  The second appraisal, by the Doré Group, determined the value of Cave Rock Summit to be $5.03 million.  Compl. ¶ 22 & Ex. 3.  The government adopted the $5.03 million valuation as the appropriate price for Cave Rock Summit, and declined to negotiate further with Hahnenkamm as to price.  Compl. ¶ 22.  Hahnenkamm takes issue with several aspects of the Doré appraisal that served as the basis for the eventual purchase price of Cave Rock Summit.  Among other things, Hahnenkamm alleges that "[t]he appraisal inaccurately described the subject property as having no legal or physical access and no entitlements," even though it "had both TRPA approval for road construction and a commitment from the Forest Service to provide access," ignored the "land coverage entitlement of 319,066 square feet, a transferable development right that c[ould] be sold to other landowners," and "mistakenly identifie[d] the

---

[1]The recitations that follow do not constitute findings of fact but rather are drawn from allegations in the complaint and documentary materials appended to the complaint.

highest and best use . . . 'AS VACANT: Rural residential or recreational land uses.'" Compl. at ¶ 26; *see also* Compl. Ex. 3, at 6-10 (Doré Group Appraisal).[2]

On June 28, 2015, after unsuccessfully attempting to negotiate a higher price for the sale of Cave Rock Summit to the Forest Service, Hahnenkamm granted the Forest Service a 24-month option to purchase the property for the $5.03 million appraised value. *See* Compl. ¶ 23 & Ex. 1. The Option Agreement is set out on a form used by the Forest Service. *See* Compl. Ex. 1 (Option Agreement), at 1 (showing USDA Forest Service form FS-5400-36 (09/2008)). The government exercised the option on July 7, 2015, and purchased Cave Rock Summit for $5.03 million. *See* Compl. at 23; Def.'s Mot. at 4. Hahnenkamm filed the instant complaint on June 23, 2017.

## STANDARDS FOR DECISION

### A. Rule 12(b)(1)

The Tucker Act provides this court with jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Although the Tucker Act waives sovereign immunity and allows a plaintiff to sue the United States for money damages, *United States v. Mitchell*, 463 U.S. 206, 212 (1983), it does not provide a plaintiff with substantive rights, *United States v. Testan*, 424 U.S. 392, 398 (1976). To perfect jurisdiction in this court, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part) (citing *Mitchell*, 463 U.S. at 216; *Testan*, 424 U.S. at 398). That is, the plaintiff must identify a source of substantive law that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained"—commonly referred to as a money-mandating provision of law. *Testan*, 424 U.S. at 400 (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009 (Cl. Ct. 1967)) (additional citation omitted).

Hahnenkamm, as plaintiff, bears the burden of establishing that jurisdiction exists by a preponderance of the evidence. *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)). In ruling on a motion to dismiss for lack of subject matter jurisdiction, the court must "accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *See id.* (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)). Thus, a complaint will be dismissed on jurisdictional grounds only "if it appears beyond doubt that [the] plaintiff can prove no set of facts . . . which would entitle [it] to relief." *Frymire v. United States*, 51 Fed. Cl. 450, 454 (2002) (citing *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 654 (1999)) (internal brackets and quotation marks omitted).

---

[2]Hahnenkamm also contends that "the appraiser, who is based in California, was not licensed to appraise property in Nevada at the time he began work." Compl. ¶ 26.

"If a court lacks jurisdiction to decide the merits of a case, dismissal is required as a matter of law."  *Gray v. United States*, 69 Fed. Cl. 95, 98 (2005) (citing *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868); *Thoen v. United States*, 765 F.2d 1110, 1116 (Fed. Cir. 1985)); *see also Treviño v. United States*, 113 Fed. Cl. 204, 207 (2013) ("Where the court has not been granted jurisdiction to hear a claim, the case must be dismissed.") (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)).

### B.  Rule 12(b)(6)

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual matters alleged "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555 (internal citation omitted).  In this context, "the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff."  *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (citing *Papasan v. Allain*, 478 U.S. 265, 283 (1986) (additional citation omitted)).

# ANALYSIS

### A.  The Santini-Burton Act

The government seeks dismissal of Hahnenkamm's complaint in part because it contends that neither the Santini-Burton Act nor the Southern Nevada Land Act are money-mandating, and thus that Hahnenkamm's claim that the government contravened those statutes is outside this court's jurisdiction.  Def.'s Mot. at 11-12.

The Santini-Burton Act authorizes the Secretary of Agriculture to acquire environmentally sensitive land located in the Lake Tahoe Basin for purposes of preserving the environmental quality of the region.  *See* Pub. L. No. 96-586, § 1(b).  The Act differentiates the Secretary's powers and responsibilities in land acquisitions based on whether the land is "improved" or "unimproved" as defined by the Act, §§ 1-3.  "Improved land" is defined as "any land on which there is located a single family dwelling or other residential or commercial building, the construction of which commenced before the date of enactment of this Act."  *Id.* § 3(c)(4)(A).  In contrast, "unimproved land" is any land other than improved land.  *Id.* at § 3(c)(4)(B). The Santini-Burton Act provides that the Secretary may acquire improved land (1) only in California, (2) only with the consent of the owner (with limited exceptions), subject to a right by the owner to retain use and occupancy of the land for a period ranging from 25 years to the life of the owner, and, (3) most importantly, unless the land be acquired by donation, the Secretary "shall pay to the owner the fair market value of the improved land on the date of its acquisition."  *Id.* § 3(c).

The provisions of the Santini-Burton Act addressing the Secretary's authority to acquire unimproved land are less restrictive.  To acquire unimproved land without the consent of the owner, the Secretary must determine that negotiation has failed.  *See id.* § 3(d).  Likewise, the

Act makes no provision for a landowner to retain an interest in the use and occupancy of the land after the sale. *See id.* § 3. Finally, for unimproved land, the Act requires that "[t]he fair market value of any land or interest in land to be acquired by the Secretary of Agriculture under this section shall be determined by an independent appraisal made, where practicable, on the basis of comparable sales at the time of such acquisition." *Id.* § 3(e).

A court ascertaining the meaning of a statute must begin with the statute's plain meaning. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) ("[W]here . . . the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'") (*citing Caminetti v. United States,* 242 U.S. 470, 485 (1917)). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253-54 (1992). Courts "do not . . . construe statutory phrases in isolation[ but instead] read statutes as a whole," *United States v. Morton*, 467 U.S. 822, 828, and thus the Supreme Court has recognized that "[w]here Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally," *National Fed. of Indep. Bus. v. Sebelius,* 567 U.S. 519, 544 (2012) (*citing Russello v. United States,* 464 U.S. 16, 23 (1983)).

A plain reading of the Santini-Burton Act as a whole leads to the conclusion that it intended to provide greater protection to owners of improved land—and for single-family dwellings on improved land in particular—than to owners of unimproved land. *Compare* Santini-Burton Act § 3(c)(2) ("[n]o single family dwelling which is improved land . . . may be acquired . . . without the consent of the owner [unless . . .]"); *and id.* § 3(c)(5) ("Unless the improved land is wholly or partially donated, the Secretary of Agriculture shall pay to the owner the fair market value of the improved land."), *with id.* § 3(e) ("The fair market value of any land or interest in land[, improved or unimproved,] . . . shall be determined by an independent appraisal."). Nonetheless, despite their differences, the basis for the Forest Service purchase of either category of land must reflect fair market value based upon an independent appraisal. *Id.* § 3(e). The government rests its jurisdictional motion to dismiss Hahnenkamm's claim under the Santini-Burton Act on the distinction between "shall pay" regarding improved lands and "shall be determined" respecting unimproved lands, arguing that the Act is not money-mandating insofar as the latter category is concerned. Def.'s Mot. at 12 ("[The] statutory language requiring an [independent] appraisal does not require the Forest Service to pay the seller fair market value."); Def.'s Reply at 6 ("[T]he requirement to *determine* fair market value is not sufficient to demonstrate that Hahnenkamm (or any other plaintiff) is entitled to *receive* fair market value . . . .") (emphasis in original).

The government's argument goes too far. In essence, Hahnenkamm contends that the Forest Service acquired Cave Rock Summit as a result of an *ultra vires* action, *i.e.*, that the government caused the Doré Group to perform an appraisal which did not reflect pertinent facts respecting the property, using the Valuation Service Protocol it imposed on the Doré Group's work.[3] The government principally responds to these allegations in addressing Hahnenkamm's contractual claim, stating:

---

[3]The Valuation Service Protocol specified that the appraiser's "sole client will be the US Forest Service," "the appraisal instructions and specific statement of work will be issued directly

> Hahnenkamm is correct that "contractual provisions made in contravention of a
> statute are void and unenforceable, and an agent acting *ultra vires* cannot bind the
> federal government." *California v. United States*, 271 F.3d 1377, 1383 (Fed. Cir.
> 2001). And "where a contract is fairly open to two constructions, by one of which
> it would be lawful and the other unlawful, the former must be adopted." *Hobbs v.
> McLean*, 117 U.S. 567, 576 (1886). But as we have shown, neither the Santini-
> Burton Act nor the S[outhern Nevada Land Act] require payment of fair market
> value. So the contract agreement to pay $5.03 million—as opposed to "fair
> market value"—does not violate either statute, and our offered construction of the
> contract therefore is not unlawful.

Def.'s Reply at 9. In this regard, the government does not contend that the purchase price
reflected fair market value. *See id*. Neither does it argue that the Doré Group's appraisal was
"an independent appraisal" that "determined" fair market value "on the basis of comparable sales
at the time of such requisition" as specified in the Santini-Burton Act, § 3. *See* Def.'s Mot. at 21
(assuming the contrary for purposes of argument); Def.'s Reply at 7-8 (arguing that the Option
Agreement "does not create any obligation for the Forest Service to evaluate the fair market
value on Hahnenkamm's behalf"). Hahnenkamm consequently argues that the difference
between "shall pay" and "shall determine," insofar as improved and unimproved lands under the
Santini-Burton Act are concerned, is insignificant in the circumstances for jurisdictional
purposes.

The court concurs that the Santini-Burton Act sets out limits on the Forest Service's
authority to acquire lands, unimproved as well as improved, and that an alleged failure or
omission, whether intentional or not, on the part of the Forest Service to adhere to those
limitations can give rise to a cause of action on the part of a landowner adversely affected by
such failure or omission. In context, the Act is susceptible to a fair inference that the remedy due
is the payment of just compensation. Hahnenkamm has alleged facts sufficient to state a money-
mandating claim under the Santini-Burton Act.

### B.  *The Southern Nevada Public Land Management Act*

The government also argues that the Southern Nevada Land Act is likewise not money-
mandating. *See* Def.'s Mot. at 13. The Southern Nevada Land Act authorizes the Secretaries of
the Interior and Agriculture to acquire "environmentally sensitive land and interests in
environmentally sensitive land," but further provides that "[l]ands may not be acquired under this
section without the consent of the owner thereof." Pub. L. No. 105-263, § 5(a)(3). As to the
price at which the Secretary may acquire those lands, the Act provides that "[t]he fair market
value of land or an interest in land to be acquired by the Secretary or the Secretary of Agriculture
under this section shall be determined pursuant to section 206 of the Federal Land Policy and
Management Act of 1976 and shall be consistent with other applicable requirements and

---

from the Forest Service," the appraiser's "sole point of contact will be the Forest Service Review
Appraisers assigned to the project," and that any requests for information "regarding the
appraisal (the process, timing, results, etc.) should be directed not to the contracted appraiser, but
to the Forest Service Reviewer." Compl. Ex. 4 (Valuation Service Protocol), at 1.

standards." *Id.* at § 5(c).  The Federal Land Policy and Management Act, Pub. L. No. 94-579, § 206, 90 Stat. 2743 (1976) ("Federal Land Policy Act") (codified as amended, in relevant part, at 43 U.S.C. § 1716), sets out requirements for appraising land to be acquired by exchange, which requirements, as the parties acknowledge, are expressly incorporated into the Southern Nevada Land Act, Pub. L. No. 105-263, § 5(c).  *See* Def.'s Mot. at 14; Pl.'s Opp'n to the Gov't's Mot. to Dismiss at 17.  These requirements include the requirements that, if the parties cannot agree to accept the result of an appraisal of the land, the matter should generally be submitted to arbitration and that rules and regulations be promulgated concerning the standards governing appraisals conducted under the Federal Land Policy Act.  *See* 43 U.S.C. §§ 1716(d), (f).  The Federal Land Policy Act expressly contemplates regulations "reflect[ing] nationally recognized appraisal standards, including, to the extent appropriate, the Uniform Appraisal Standards for Federal Land Acquisitions."  43 U.S.C. § 1716(f)(2).

Based on these provisions of the Federal Land Policy Act, incorporated by reference into the relevant section of the Southern Nevada Land Act, Hahnenkamm alleges that the Southern Nevada Land Act requires the payment of fair market value for land acquisitions, and that the Forest Service failed to obtain an appraisal that complied with the requirements of the Acts and failed to arbitrate the disagreement between the parties over the valuations of Cave Rock Summit.  *See* Compl. at ¶¶ 14-16, 22, 30-31.  The Forest Service counters that neither the Southern Nevada Land Act nor the Federal Land Policy Act require the Forest Service to pay fair market value, but rather, fair market value must only be determined by an appraisal that follows certain procedures.  *See* Def.'s Mot. at 13-15; Def.'s Reply at 4-5.

In pertinent part, Hahnenkamm alleges that the Forest Service failed to comply with the appraisal provisions of the Southern Nevada Land Act as they incorporate the Federal Land Policy Act.  *See* Compl. at ¶¶ 14-16, 22, 30-31.  The question, then, is whether the appraisal provisions of the Southern Nevada Land Act can "fairly be interpreted" as mandating the payment of compensation if, as Hahnenkamm alleges, the Forest Service failed to comply with them.  *Testan,* 424 U.S. at 400.  Under the Tucker Act, "[i]n determining whether a law is money-mandating, the court 'must train on specific . . . duty-imposing statutory or regulatory prescriptions.'"  *Johnson v. United States,* 105 Fed. Cl. 85, 92 (2012) (quoting *United States v. Navajo Nation,* 573 U.S. 488, 506 (2003)).

The appraisal requirements of the Southern Nevada Land Act mandate a compliant appraisal as the basis for purchase of land by the Secretaries of Interior and Agriculture.  Hahnenkamm has factually alleged that Cave Rock Summit was acquired by the Forest Service in contravention of the appraisal provisions of the Southern Nevada Land Act.  Congress, in the Southern Nevada Land Act, required that the Forest Service in every case determine the fair market value for the land it acquires through prescribed appraisal processes, a requirement that serves to protect both the government and the landowners with whom the government deals.  As with the Santini-Burton Act, a failure or omission by the government to adhere to the requirements to determine fair market value as a basis for purchase of land can constitute a contravention of the Southern Nevada Land Act that is money-mandating in this context and thus that suffices for jurisdictional purposes under the Tucker Act.

### C. Alleged Breach of Contract

In ruling on the government's motion to dismiss Hahnenkamm's claim of alleged breach of contract for failure to state a claim upon which relief can be granted, the court must determine whether Hahnenkamm has sufficiently alleged the elements of a breach of contract claim, namely: "(1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). The validity of the contract is not in dispute. *See* Compl. at ¶ 23; Def.'s Mot. at 3. The issue at this stage, rather, is whether Hahnenkamm has sufficiently alleged an obligation incumbent upon the government, a breach of that obligation, and that Hahnenkamm consequently was damaged. As to whether a duty existed, the relevant inquiry is whether the Option Agreement incorporated a duty on the part of the Forest Service to pay fair market value for Cave Rock Summit and obtain an appraisal of that fair market value that complied with certain federal appraisal standards. If Hahnenkamm's pleadings sufficiently allege facts that raise a sufficiently plausible claim to relief, then the Forest Service's motion under RCFC 12(b)(6) must be denied.

The Forest Service argues the Option Agreement's price term supersedes any requirement to pay fair market value. Def.'s Reply at 7 ("[T]he option contract did not require the Forest Service to pay 'fair market value' for Cave Rock Summit. To the contrary, the parties agreed that the 'purchase price is $5,030,000.00'"). The Forest Service further submits that the Option Agreement's language pertaining to the appraisal of Cave Rock Summit does not incorporate any appraisal provisions of the Santini-Burton Act, the Southern Nevada Land Act, or the Uniform Appraisal Standards for Federal Land Acquisition, and that the Option Agreement "does not create any obligation for the Forest Service to evaluate the fair market value on Hahnenkamm's behalf." *Id.* at 7-8.

The Forest Service's arguments ignore the factual disputes that bear on Hahnenkamm's contractual claims. The court is bound to accept as true the allegations Hahnenkamm has alleged in its complaint, and the Forest Service's arguments isolate some portions of the Option Agreement to the exclusion of others. Among other things, the contract specifies that "[t]he purchase price shall be supported by an appraisal prepared in conformity with the Uniform Appraisal Standards for Federal Land Acquisitions." Option Agreement ¶ II.D. And, while the contract contains an integration clause, *id.* ¶ XVI.C,[4] it also specifies that "[a]ll representatives [ *sic* ], warranties, obligations, and rights set forth herein shall survive the closing and not merge with the deed, *id.* ¶ XVI.B.

---

[4]The integration clause provides:

All terms and conditions with respect to this offer are expressly contained herein and the Vendor agrees that no representative or agent of the United States has made any representations or promise with respect to his offer not expressly contained therein.

Option Agreement ¶ XVI.C.

Hahnenkamm has alleged that the Option Agreement obligates the Forest Service to obtain an appraisal created in compliance with federal land appraisal standards and to pay fair market value as so determined, Compl. ¶¶ 34, 36, that the Forest Service failed to satisfy this contractual duty by failing to pay fair market value, Compl. ¶ 35 and that the Service instead paid an amount that was reached in reliance on a flawed appraisal.  Compl. ¶ 37.  Finally, Hahnenkamm has alleged that it was damaged by the Forest Service's alleged breach of the Option Agreement because it received less than fair market value for the sale of Cave Rock Summit as a result of the Forest Service's alleged breach.  Compl. ¶ 35.

In short, Hahnenkamm has alleged all of the necessary elements of a breach of contract claim, and, accepting those allegations as true, *see Twombly*, 550 U.S. at 555; *Cambridge*, 558 F.3d at 1335, has stated a claim to relief sufficient to survive dismissal under RCFC 12(b)(6). Thus the government's motion to dismiss for failure to state a claim upon which relief can be granted must be denied.

## CONCLUSION

For the reasons stated above, the government's motion to dismiss plaintiff's complaint pursuant to RCFC 12(b)(1) and (6) is DENIED.

The government shall file an answer to Hahnenkamm's complaint within the time specified by RCFC 12(a)(4)(A)(i).

No costs.

**IT IS SO ORDERED.**


s/ Charles F. Lettow
Charles F. Lettow
Judge