# In the United States Court of Federal Claims

No. 17-855C

(Filed: February 28, 2020)

```
*********************************  )
HAHNENKAMM, LLC,                   )
                                   )   Statutory and contractual claims;
            Plaintiff,             )   Santini-Burton Act, Southern
                                   )   Nevada Public Land Management Act;
     v.                            )   alleged breach of contractual term requiring
                                   )   a sale of property to be made at fair market
UNITED STATES,                     )   value; contested evidence of intentional
                                   )   waiver
            Defendant.             )
                                   )
*********************************
```

Roger J. Marzulla, Marzulla Law, LLC, Washington, D.C., for plaintiff. With him on the briefs was Nancie G. Marzulla, Marzulla Law, LLC, Washington, D.C.

Geoffrey M. Long, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Joseph H. Hunt, Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Senior Judge.

The case at hand involves the alleged contravention of two federal statutes by the United States government and an alleged breach of contract with regard to its purchase of plaintiff's land. Plaintiff, Hahnenkamm, LLC ("Hahnenkamm"), was the seller of a 39.25-acre tract of land overlooking Lake Tahoe in Douglas County, Nevada. Compl. ¶ 1, ECF No. 1. On July 7, 2015, the United States Forest Service ("the Forest Service" or "the government") exercised its option under an option agreement ("the option agreement") between the parties to purchase plaintiff's property for $5.03 million. *See* Compl. ¶ 23. In its complaint, filed June 23, 2017, Hahnenkamm alleges that the government breached the contract and violated both the Santini-Burton Act, Pub. L. No. 96-586, 94 Stat. 3381 (1980) (not codified in relevant part in the United States Code), and the Southern Nevada Public Land Management Act, Pub. L. No. 105-263, 112 Stat. 2343 (1998) ("Southern Nevada Land Act") (not codified in relevant part in the United States Code), in connection with its exercise of the option to purchase the land. *See generally* Compl. Specifically, Hahnenkamm argues that it did not receive the fair market value due for the property, as required by the aforementioned statutes and the contract, because the Forest Service relied on a nonconforming appraisal. *See* Compl. at 1-2.

Pending before the court are cross-motions for summary judgment. *See* Def.'s Mot. for Summary Judgment ("Def.'s Mot."), ECF No. 47; Pl.'s Cross-Motion and Response to Def.'s Mot. ("Pl.'s Mot."), ECF No. 48.[1]  Briefing was completed on February 14, 2020, *see* Def.'s Response and Reply ("Def.'s Reply"), ECF No. 53; Pl.'s Response and Reply ("Pl.'s Reply"), ECF No. 54, and a hearing on the motions was held on February 20, 2020.

After considering both motions, the court finds that a material factual dispute remains. Accordingly, the court has decided to exercise its discretion under Rule 56 of the Rules of the Court of Federal Claims ("RCFC") to defer ruling on both motions for summary judgment until trial.[2]

## BACKGROUND[3]

Hahnenkamm, LLC is a family-owned limited liability company and was the owner in fee of a 39.25-acre parcel of land, known as "Cave Rock Summit," located in Glenbrook, Douglas County, Nevada, overlooking Lake Tahoe. Compl. ¶ 1. Lake Tahoe, North America's largest alpine lake, is a popular tourist destination situated in the Sierra Nevada Mountain Range. Def.'s App. at 91. "[A]bout 78% of Lake Tahoe's watershed, comprised of more than 500 acres, is included in the Lake Tahoe Basin Management Unit as designated national forest land and is overseen by the U.S. Forest Service." *Id.* at 101. The Tahoe Regional Planning Agency ("TRPA"), a dual-state agency between California and Nevada, governs the development of the remaining land around the lake through land-use regulation and planning to ensure the area maintains its natural attributes. *See id.* at 102.

Cave Rock Summit is located on a mountaintop with unimpeded panoramic views of nearly the entire lake. Compl. ¶ 7. The parcel, during all relevant events regarding the transaction, was vacant land. *See* Def.'s App. at 105. In 2008, the Forest Service expressed interest in purchasing Cave Rock Summit from Hahnenkamm. *See* Compl. ¶ 17. On October 17, 2008, the government set aside $11,686,950 for purchase of the property, noting that the funding was a budget placeholder and did not necessarily reflect the value of the parcel. Compl. ¶ 17. The Forest Service also notified Hahnenkamm that before any sale, it would need to obtain certain approvals "to prove that the land had a highest and best use as a luxury family residential compound." Compl. ¶ 17. Over a subsequent period of years, Hahnenkamm applied for and received the necessary land-use approvals and TRPA permits to allow for the potential

---

[1]Along with its motion for summary judgment, defendant included a 570-page appendix that contains documentary materials exchanged between the parties during discovery, many of which provide the basis for the background in this case. References to this appendix will be cited as "Def.'s App. at [page number]."

[2]RCFC 56 provides in pertinent part that the court may defer considering a motion for summary judgment if "Facts Are Unavailable to the Nonmovant" or the parties "Fail[] to Properly Support or Address a Fact." RCFC 56(d), (e) (headings) (capitalization in original).

[3]The recitations that follow do not constitute findings of fact by the court. Instead, they are taken from the parties' pleadings, their cross-motions for summary judgment, the documentary materials submitted with the parties' motions, and two prior opinions entered in this case, *Hahnenkamm, LLC v. United States*, 145 Fed. Cl. 68 (2019); *Hahnenkamm, LLC v. United States*, 135 Fed. Cl. 579 (2017).

construction of a residential complex on the property.  Compl. ¶¶ 7, 8.  The TRPA permits, issued on September 16, 2013, authorized the development of a large dwelling on the site as well as construction of a year-round paved road to access the compound, which the Forest Service would allow to run adjacent to its lands.  Compl. ¶¶ 8, 18.

Following completion of this process, the Forest Service contracted with Daniel A. Leck to appraise the Cave Rock Summit property.  Compl. ¶ 19.  "The Forest Service did not request or obtain Hahnenkamm's consent to use [Mr.] Leck as the appraiser."  Pl.'s Mot. at 4 (citations omitted).  Mr. Leck's appraisal valued the property at $4 million.  Compl. ¶ 19.  Hahnenkamm, dissatisfied with the valuation, requested another appraisal.  *See* Compl. ¶ 20.  The Forest Service allowed a second appraisal, but on the conditions that Hahnenkamm pay for it, that it be entirely prepared for the Forest Service, and that it be completed under the control and supervision of the Forest Service.  Compl. ¶ 20.  The second appraiser selected was Lance Doré, of The Doré Group.  Compl. ¶ 22; Pl.'s Mot. at 5.

Prior to the completion of Mr. Doré's appraisal, Hahnenkamm undertook an evaluation itself of the Cave Rock Summit property, considering 14 properties it believed could serve as comparable properties for the purpose of valuation.  *See* Def.'s Mot. at 5; *see also* Def.'s App. at 33-67 (collecting Hahnenkamm's research).  Relying on six properties it believed were appropriate comparable yardsticks, Hahnenkamm concluded that its property should be valued at $130,970,493.  Def.'s App. at 63.  This research, which was compiled without the aid of any licensed or trained appraiser, was never substantively considered by the Forest Service.  *See generally id.* at 474-75.

Mr. Doré completed his appraisal on November 4, 2014.  Def.'s App. at 71.  In his valuation, Mr. Doré utilized the "sales comparison approach," deriving a value of Cave Rock Summit by comparing it to "sales of similar properties" and "adjust[ing] for its inferior or superior characteristics."  *Id.* at 131.  The comparables selected by Mr. Doré included seven properties of sizes varying from 0.48 acres to 204.88 acres, all located around Lake Tahoe: (1) Quail Lake; (2) Edgewood; (3) Sherman Way; (4) Sierra Sunset; (5) Lakeshore; (6) Highway 50; and (7) Snug Harbor.  *Id.* at 136.  Mr. Doré concluded that the value of the Cave Rock Summit property was $5,030,000.  *Id.* at 73.  Additionally, Mr. Doré certified that "[the] appraisal was prepared in conformance with the Uniform Standards of Professional Appraisal Practice," *id.* at 71, also known as "the Yellow Book," Compl. ¶ 34.

On January 9, 2015, the Forest Service completed its review and approved use of the Doré appraisal, considering it to "me[e]t State and Federal Standards," Def.'s App. at 243 (capitalization in original), including the Yellow Book, *id.* at 258.  After reviewing the valuation itself, Hahnenkamm responded to the Forest Service setting out a series of issues it had with the Doré appraisal, arguing that Doré's selected comparables were not in compliance with the Yellow Book.  *See generally id.* at 419-63 (detailing Hahnenkamm's arguments questioning the Doré appraisal entitled, "Yellow Book Issues Affecting Dor[é] Group Sales Comparables").  Hahnenkamm raised six main arguments as to why the Doré valuation was not correct: (1) that the comparables used did not have the same highest and best use as Cave Rock Summit, *id.* at 421-22; (2) that a property of comparable size, Edgewood (33.49 acres), should be excluded because it was a forced sale due to bankruptcy, *id.* at 424; (3) that Quail Lake (204.88 acres) should be excluded as a government sale, *id.* at 427; (4) that Sherman Way (15.34 acres) had deed restrictions that were not taken into account in its value, *id.* at 428; (5) that the appraisal failed to account for TRPA land coverage regulations, *id.* at 430-33; and (6) that Sierra Sunset

(6.19 acres) should have been excluded for requiring substantial adjustments, *id.* at 435.[4] Additionally, Hahnenkamm renewed its request for the Forest Service and Mr. Doré to consider its research and proposed comparables. *See id.* at 438.

The Forest Service rejected Hahnenkamm's arguments and did not revise the appraisal. *See* Def.'s App. at 474-75. Specifically, the Forest Service explained that it would not consider Hahnenkamm's compilation because it "do[es] not represent accepted appraisal methodology," and "[i]t would be unethical for the landowner . . . to demand that certain sales be used for an appraisal." *Id.* at 475. Further, the Forest Service investigated Hahnenkamm's concerns and found them to be without merit. *See id.* at 272-73. The Forest Service reiterated to Hahnenkamm that the Doré appraisal met Yellow Book standards and that "the Dor[é] report remain[ed] valid for $5,030,000 until 11:59 p.m., July 9, 2015." *Id.* at 273 (communication sent to Hahnenkamm on May 15, 2015).

The documentary evidence does not show further communications between Hahnenkamm and the Forest Service until June 29, 2015, when Hahnenkamm sent a copy of an executed option agreement to the Forest Service, offering to sell the Cave Rock Summit parcel to the Forest Service for $5,030,000. *See* Def.'s App. at 503. The option agreement was on a Forest Service form, FS-5400-36 (09/2008), and included a provision that the purchase price be supported by an appraisal in conformity with the Yellow Book. *Id.* at 504; Compl. ¶ 23.[5] On July 7, 2015, the Forest Service exercised its option and purchased Cave Rock Summit. Def.'s App. at 512.

In the months that followed, Hahnenkamm became aware of the sale of a property it believed to be similar to Cave Rock Summit for about $28 million. *See* Decl. of William Hartman ¶ 17, ECF No. 50. Given what it believed were many similarities between that property and Cave Rock Summit and yet a large disparity in price, Hahnenkamm then sought legal counsel to review the appraisal of Cave Rock Summit. Pl.'s Mot. at 8. Subsequently, Hahnenkamm filed this suit on June 23, 2017. *See* Compl.

---

[4]In addition, three other Doré comparables were relatively small, prohibiting any construction of a residential compound: Snug Harbor (0.48 acres), Highway 50 (2.83 acres), and Lakeshore (3.18 acres). Def.'s App. at 461.

[5]Paragraph II.D. of the option agreement specified that:

> D. The purchase price shall be supported by an appraisal prepared in conformity with the Uniform Appraisal Standards for Federal Land Acquisitions. Except as may be specifically provided for herein, the Property shall not be subject to reappraisal due to the passage of time required to meet the substantive and procedural requirements set forth in this Option. Furthermore, an appraisal shall not be required if the Secretary determines that an appraisal is unnecessary because the valuation problem is uncomplicated and the anticipated value of the proposed acquisition is estimated at $10,000 or less, based on a review of available data. *See* 49 C.F.R. 24.102(c)(2).

Def.'s App. at 505.

Hahnenkamm's first cause of action arises from the Santini-Burton Act. The Santini-Burton Act was passed "to provide for acquisition of environmentally sensitive lands in the Lake Tahoe Basin." § 1(b). The Act differentiates between improved and unimproved land and requires that the Forest Service, when purchasing either category of land, pay fair market value for the land based on an independent appraisal. *See Hahnenkamm*, 135 Fed. Cl. at 584 (citing Santini-Burton Act § 3(e)). Hahnenkamm alleges that, "In violation of the Santini-Burton Act, the Forest Service failed to determine the fair market value of Hahnenkamm's land on the date of acquisition, and failed to obtain an independent appraisal made on the basis of comparable sales at the time of such acquisition." Compl. ¶ 26. Hahnenkamm also contends that the government violated the Santini-Burton Act because the appraisal completed by The Doré Group did not comply with the requirements of the Yellow Book. *See* Compl. ¶ 26.

Hahnenkamm's second cause of action arises from the Southern Nevada Land Act. Similarly to the Santini-Burton Act, the Southern Nevada Land Act was passed "to provide for the acquisition of environmentally sensitive lands in the State of Nevada." § 2(b). Under Subsection 5(c), the Act requires that the purchase price for any land acquisition under the Act be the fair market value of the land, as determined pursuant to Section 206 of the Federal Land Policy and Management Act of 1976, Pub. L. No. 94-579, § 206, 90 Stat. 2743 (1976) ("Federal Land Policy Act") (codified, as amended, in relevant part, at 43 US.C. § 1716), as well as any other applicable requirements and standards. *See Hahnenkamm*, 135 Fed. Cl. at 585. The Federal Land Policy Act requires that an appraisal of the land be done in compliance with the Yellow Book, *id.* (citing 43 U.S.C. §§ 1716(d), (f)), and mandates that if the parties cannot agree to accept the result of an appraisal of the land, then the matter should be submitted to arbitration, 43 U.S.C. § 1716(d)(2). Hahnenkamm alleges that the Forest Service violated the Southern Nevada Land Act by "fail[ing] to pay Hahnenkamm the fair market value of the Cave Rock Summit property" and for failing to comply with the statutory method of determining fair market value, including failing to submit the appraisal to an arbitrator. Compl. ¶ 31.

Lastly, Hahnenkamm alleges that as part of the option agreement, "the United States covenanted that it would pay fair market value for the Cave Rock Summit Property," Compl. ¶ 34, and that "the United States breached this contract by failing to pay Hahnenkamm the fair market value of the subject property, and by failing to obtain an appraisal prepared in conformity with the Yellow Book," Compl. ¶ 35. Additionally, Hahnenkamm claims that, "The United States also breached the implied covenant of good faith and fair dealing by failing to pay the fair market value for the subject property." Compl. ¶ 38.

As relief, Hahnenkamm seeks the difference between the fair market value of the subject property at the time of acquisition, less the purchase price actually paid, which demand it believes to be in excess of $15 million. Compl. ¶ 40.

## STANDARDS FOR DECISION

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A material fact is one that "might affect the outcome of the suit." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).[6] A genuine dispute exists if the finder of fact may reasonably resolve the dispute in favor of either party. *Id.* at 250.

      The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (ellipsis in original) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). To establish "that a fact cannot be or is genuinely disputed," a party must "cite[] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." RCFC 56(c)(1)(A). If the record taken as a whole "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

      These same standards apply when the parties have cross-moved for summary judgment. *See Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962, 968-69 (Fed. Cir. 2009). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (citation omitted).

## ANALYSIS

      The main issue before the court is whether Hahnenkamm waived its ability to challenge the appraisal. *See* Def.'s Mot. at 17; Pl.'s Mot. at 14.[7] The government contends that

---

[6] Because RCFC 56 mirrors Fed. R. Civ. P. 56, the rules should be interpreted *in pari materia*.

[7] The government also contends that Hahnenkamm should be equitably estopped from challenging the appraisal. *See* Def.'s Mot. at 20; Pl.'s Mot. at 23. Equitable estoppel requires that there be: "(1) misleading conduct, which may include not only statements and action but silence and inaction, leading another to reasonably infer that rights will not be asserted against it; (2) reliance upon this conduct; and (3) due to this reliance, material prejudice if the delayed assertion of such rights is permitted." *SUFI Network Servs., Inc. v. United States*, 755 F.3d 1305, 1325 (Fed. Cir. 2014) (citation omitted). The government argues that the misleading conduct by Hahnenkamm is the act of entering the contract without any reservation of its rights. *See* Hr'g Tr. 21:16 to 22:4 (Feb. 20, 2020) (this date will be omitted from further citations to the hearing transcript). At the hearing, the parties essentially conceded that neither acted in bad faith at any point in discussing the potential sale or in actually executing it. *See* Hr'g Tr. 11:18 to 12:2; 38:22 to 40:2. In the absence of bad faith and given the lack of intent to mislead by Hahnenkamm, *see* Hr'g Tr. 29:6-12 ("[W]e can all assume today that on July 7th, 2015, both the Forest Service and Mr. Hartman believed in good faith . . . that the purchase price was the fair market value."), 30:1-7 ("How can it be misleading that Hahnenkamm, relying on the Forest Service's representations in the[] two letters from Ms. McAuliffe and Ms. Brower, and then relying on the very language of the contract itself still somehow misled the Forest Service?

6

Hahnenkamm, aware of its rights and the contents of the Doré appraisal, waived these rights when it "voluntarily contracted to sell Cave Rock Summit to the [g]overnment." Def.'s Mot. at 19. Plaintiff principally responds by arguing that it did not knowingly or voluntarily waive its statutory or contractual rights because Hahnenkamm believed it was receiving fair market value and did not learn until well after the contract's formation that it did not.[8]

"Waiver is an affirmative defense, as to which the breaching party bears the burden of proof." *Westfed Holdings, Inc. v. United States*, 407 F.3d 1352, 1360 (Fed. Cir. 2005) (citation omitted). Waiver is the "intentional relinquishment of a known right." *International Indus. Park, Inc. v. United States*, 100 Fed. Cl. 638, 655 (2011) (quoting *A Olympic Forwarder, Inc. v. United States*, 33 Fed. Cl. 514, 521 (1995)). "Waiver requires (1) the existence at the time of the waiver a right, privilege, advantage or benefit that may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage or benefit." *Id.* (quoting *Youngdale & Sons Constr. Co. v. United States*, 22 Cl. Ct. 345, 347 (1991)).

The government asserts that Hahnenkamm waived its right to an appraisal for fair market value. Hr'g Tr. 12:16 to 13:5; 26:5-18. To support this assertion, the government points first to two letters from its appendix, each sent by the Forest Service to Hahnenkamm prior to the execution of the option contract. The first letter, dated May 15, 2015, is a comprehensive explanation from the Forest Service and Mr. Doré as to why the Forest Service would not reconsider the Doré Group's appraisal value, responding to Hahnenkamm's Yellow Book concerns. *See* Def.'s App. at 263. The second letter, dated May 22, 2015, accompanied this explanation with other guarantees to Hahnenkamm that the Forest Service believed the Doré appraisal met Yellow Book standards and stated that it would not consider Hahnenkamm's proposed comparable properties. *See* Def.'s App. at 474-75. The government argues that these documents, along with Hahnenkamm's Yellow Book issues compilation, show that Hahnenkamm knew of (1) the Yellow Book, (2) its right to appraisal in compliance with the Yellow Book's guidelines, and (3) the Forest Service's intention to rely on the Doré appraisal to derive the value of Cave Rock Summit. *See* Def.'s Mot. at 19. It was with this knowledge, the government emphasizes, that Hahnenkamm then voluntarily gave an option to sell the property to the Forest Service for the $5.03 million valuation derived from the Doré appraisal. *Id.* Thus, the government contends, this act of signing the option serves as Hahnenkamm's waiver.

But the government truncates the waiver inquiry. Here, it is undisputed that Hahnenkamm entered into the option willingly. That it did so, however, does not in itself constitute waiver. Instead, the question is whether, at the time, Hahnenkamm believed the Doré appraisal supporting the contract valuation to be non-compliant with the Yellow Book, and yet, entered into the contract despite this knowledge. The facts put forth by Hahnenkamm suggest otherwise. *See, e.g.*, Decl. of William Hartman ¶¶ 15-17 (including statements like "I concluded that they were the experts and they must be right," "I had no intention of waiving our rights to receive fair market value," and "I believed the Forest Service was honoring those rights"). These facts suggest that Hahnenkamm believed, in part relying on the Forest Service's representations

---

How?"), the government has failed to demonstrate the element of "misleading conduct" necessary for finding that equitable estoppel should apply.

[8]For purposes of this motion only, the government stipulates that the Doré appraisal failed to adhere to the standards of the Yellow Book. Hr'g Tr. 7:6-12. This stipulation, however, will not bind the government at trial.

7

and guarantees, that it was receiving fair market value at the time it granted the option based on an appraisal in compliance with the Yellow Book, and that it was not until months after the contract's execution that Hahnenkamm became aware of this possible breach.  On the basis of these facts, Hahnenkamm may not have "inten[ded] to relinquish such right*." International Indus.*, 100 Fed. Cl. at 655 (citation omitted).

That this factual dispute exists is precisely the point.  The inquiry into Hahnenkamm's state of mind, *i.e.*, intent, at the time of contract execution is an issue of material fact that has not been sufficiently developed to be decided at this time.  Simply put, in a case such as this, where most of the relevant facts are from a chain of documentary exchanges and a single declaration of a witness who has yet to be cross-examined before the court, the court is not in a position to decide this factual issue.

## CONCLUSION

For the reasons stated, both the government's motion for summary judgment and Hahnenkamm's motion for summary judgment are DEFERRED.  Additionally, the scheduling order currently in effect, ECF Nos. 38, 46, 52, is SUSPENDED.  The court will hold a telephonic conference on March 16, 2020 at 10:00 a.m. to address a schedule for further proceedings.

It is so **ORDERED.**

                                                   s/ Charles F. Lettow
                                                 Charles F. Lettow
                                                 Senior Judge